UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE STRAHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:13CV448 SNLJ |
| ) | |
| DR. FRED ROTTNEK, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment. The matter has been fully briefed and is ripe for disposition. For the following reasons, the Court will deny the motion.

**I.    Background**

Plaintiff George Strahan filed this 42 U.S.C. § 1983 claim against defendant Dr. Fred Rottnek who was on the medical staff at St. Louis County Buzz Westfall Justice Center (the "jail") when plaintiff was incarcerated at that facility. Plaintiff alleges that Dr. Rottnek was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff complains that his pre-existing prescription pain medication was intentionally and abruptly withdrawn and substituted with over-the-counter medication that was insufficient to properly treat his chronic pain based solely on a policy implemented by Dr. Rottnek as opposed to a medical judgment made after individual examination. Plaintiff contends Dr. Rottnek's policy of cutting off all narcotic pain medications to inmates like plaintiff who enter the jail inflicts severe pain and

suffering on the patients and carries with it grave risks of severe withdrawal symptoms. Plaintiff also makes a state law claim for medical negligence, alleging that Dr. Rottnek was negligent in his treatment of plaintiff's chronic pain.

In support of his motion for summary judgment, defendant maintains that there is no evidence that he was deliberately indifferent to a serious medical need. Further, defendant maintains that the medical records demonstrate that plaintiff was provided with appropriate medical care. For these reasons, defendant contends that he is entitled to judgment as a matter of law in his favor.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of

any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III.  Facts

The Court has reviewed the parties' statements of uncontroverted material facts, the responses, and the supporting documentation, and, where appropriate, will accept facts as supported by appropriate admissible evidence. The following relevant facts[1] are undisputed. Additional facts are set forth in the discussion.

Plaintiff injured his back in 1990 as a result of a fall. Plaintiff testified that he suffers from severe, chronic pain in multiple places in his body including the middle part of his back and neck "like a fire burning, just surging out," a "steady pain" in his low back, and a "sleepy numb" pain on his hip and buttocks. MRIs of his lumbar and cervical spine show multiple abnormalities throughout his spine, including Schmorl's node, disc

---

[1] Defendant submits a number of facts not relevant to this motion including information prior to plaintiff's incarceration regarding plaintiff treating with different physicians for his chronic pain management, going to emergency rooms to obtain prescription medication for his pain management, obtaining his prescriptions from different pharmacies, and how frequently plaintiff filled prescriptions in the time period immediately before he was incarcerated. There is no evidence that this information was known or considered by defendant at the time plaintiff's pre-existing pain management prescription medication was abruptly withdrawn following his incarceration.

3

desiccation, annular tears, disc bulges, bilateral facet arthropathies, lesions, synovial cysts, bilateral neural foraminal narrowing, and foraminal stenosis.  Plaintiff's expert witness, Dr. Sturm, testified that plaintiff suffers from foraminal spinal stenosis and degenerative disc disease.

Prior to incarceration, plaintiff saw a number of physicians including pain management physicians and emergency room physicians for treatment of his chronic pain.  Plaintiff's chronic pain was treated with narcotic prescription medications including Vicodin (hydrocodone and acetaminophen) and Percocet (oxycodone and acetaminophen).  Since August 2012 until the time plaintiff was incarcerated in November 2012, he was under the care of Dr. Beyzer who had prescribed Vicodin for plaintiff's pain, one to two 10 mg hydrocodone/325 mg acetaminophen pills every six to eight hours, a prescription allowing plaintiff to take between 30 to 80 mg of hydrocodone each day.

Upon entering the jail, plaintiff came under the care of Dr. Rottnek, who is both the Medical Director and Lead Physician at the jail.  During an intake assessment conducted by an intake nurse, plaintiff informed the nurse of his current prescription medications including Vicodin.  Jail staff called the pharmacies where plaintiff reported he had filled prescription medications to confirm what medications he was taking.  On plaintiff's second day of incarceration, the medical staff prescribed five days of Vicodin, one 5 mg hydrocodone/500 mg acetaminophen pill twice daily, for a recent wrist injury until further assessment could be done on his wrist.  The jail staff had confirmed

plaintiff's prescription for Vicodin for his chronic pain but he was not allowed to continue taking his medication as previously prescribed.

After expiration of the Vicodin prescription for the wrist pain, plaintiff was given Tylenol for pain control of his chronic pain issues. Plaintiff was given Tylenol in lieu of his Vicodin prescription pursuant to Dr. Rottnek's policy on pain management. Dr. Rottnek's protocol for the vast majority of inmates including plaintiff that come to the jail on chronic narcotic pain medication is to stop the prescribed medication and start them on Tylenol to see how they do.[2] Dr. Rottnek describes his policy for pain management in new inmates as a stepwise progression that starts with over-the-counter medications, adding in other medications to get to an appropriate level of medication to address the patient's pain level.

Plaintiff was treated with Tylenol for over three weeks. On December 28, 2012, plaintiff was prescribed Flexeril, a muscle relaxer, in addition to Tylenol at a visit with Physician Assistant Todd Parker. The Flexeril was prescribed in response to plaintiff's complaint of continued pain. Plaintiff's first visit with Dr. Rottnek was January 18, 2013 on referral from PA Parker. At this visit, Dr. Rottnek prescribed the pain medication Tramadol. Six weeks later, on March 1, 2013, Dr. Rottnek increased the Tramadol dose. On April 25, 2013, Dr. Rottnek prescribed up to six Vicodin 5mg hydrocodone/500 mg acetaminophen per day. Dr. Rottnek also referred plaintiff to an orthopedic surgeon, Dr. George, for further evaluation of his complaints of back pain.

---

[2] According to Dr. Rottnek, an inmate with an active cancer diagnosis, amputation, or coming out of the hospital ICU may be continued on controlled substances.

Plaintiff filed this lawsuit on March 8, 2013. During his deposition in this matter, plaintiff's expert witness, Dr. Sturm, testified that a conscious decision was made by Dr. Rottnek to implement a policy where inmate medication levels are reduced at the time of incarceration. Dr. Sturm testified that Dr. Rottnek's policy is equivalent to shutting off pain management completely. According to Dr. Sturm, when high potency medication is stopped, "that just runs the patient directly into withdrawal" and "almost everybody is going to go into some degree of withdrawal [because] [i]t's just side effects of not having the medication." In his opinion, it was not a wise policy to apply a general broad policy to all inmates and, instead, there should be a medical records review and a decision made on a case-by-case basis. Dr. Sturm's opinion is supported by a National Commission on Correctional Health Care (NCCHC) guideline which states, "In the case of new inmates who have been receiving long-term opioids, pain and function should be assessed at baseline prior to tapering the drug and tracked over time to assess any change." NCCHC is an organization that creates standards for correctional health care and provides educational conferences to all levels of correctional health care workers. NCCHC publishes guidelines to help a practitioner manage a particular medical condition and position statements to state the position of the organization as a whole regarding a medical issue.

## IV.  Discussion

### A.  Section 1983 deliberate indifference claim

Deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 106,

97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "To show deliberate indifference, [a plaintiff] must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "'Serious medical need' has been defined as a medical need which 'has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (quoting *Johnson v. Busby,* 953 F.2d 349, 351 (8th Cir. 1991); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (quoting *Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")). The second part of the test requires plaintiff to prove that the prison officials were more than negligent. *Alberson v. Norris,* 458 F.3d 762, 765 (8th Cir. 2006). Plaintiff must show that the prison official's mental state was "akin to criminal recklessness." *Gordon*, 454 F.3d at 862. "Knowledge of risk may be inferred from the record." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

The Eighth Amendment does not limit physicians from exercising their independent medical judgment. *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996). Inmates do not a have constitutional right to any particular type of treatment. *Id.* A mere disagreement with the course of treatment or matters of expert medical judgment does not rise to the level of a violation of the Eighth Amendment. *Meuir v. Greene County Jail Employees,* 487 F.3d 1115, 1118-19 (8th Cir. 2007).

Defendant contends that plaintiff's pain was treated by prescribing him alternative pain relievers and that plaintiff's claim is simply that he wanted his preferred pain reliever medication. Defendant argues that plaintiff does not have a constitutional right to choose his pain medication and that plaintiff's claim is a mere disagreement as to medical treatment, which does not rise to the level of deliberate indifference to a serious medical need. Defendant maintains he did not gratuitously withhold plaintiff's narcotic medication, but reduced it based on his medical judgment. Plaintiff argues this is not a case of disagreement of medical judgment but instead is a case where an institutionalized policy crafted by Dr. Rottnek created a situation in which no medical judgment was exercised with respect to plaintiff, resulting in a complete denial of care.

Additionally, defendant argues that plaintiff's own expert testified he did not know whether defendant was deliberately indifferent to plaintiff's serious medical needs and, therefore, plaintiff cannot establish deliberate indifference. An expert witness "cannot provide testimony whether defendants were deliberately indifferent to [an inmate's] medical needs, because to prove deliberate indifference a plaintiff must 'prove that officials knew about excessive risks to his heath but disregarded them and that their unconstitutional actions in fact caused his injuries.'" *Tanner v. City of Sullivan*, 4:11CV1361 NAB, 2013 WL 121476, at *2 (E.D. Mo. Jan. 9, 2013) (quoting *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006)). An expert cannot testify as to a defendant's knowledge about any excessive risks to an inmate's health. "It is the jury's province to determine what facts are known to the [d]efendants." *Id.* (quoting *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995).

It is undisputed that prior treating physicians had prescribed narcotic pain medication, including Vicodin and Percocet, for plaintiff's chronic pain and that plaintiff had a pre-existing prescription for Vicodin at the time of incarceration. It is also undisputed that plaintiff was not given Vicodin as prescribed for him and instead was placed on Tylenol shortly after incarceration. This change in medication was based solely on Dr. Rottnek's policy, as applied to the vast majority of patient inmates at the jail including plaintiff, to substitute narcotic pain medication with over-the-counter medication and then apply a stepwise approach to pain management. Pursuant to this policy, the patients are started on Tylenol for pain medication without regard for their individual medical needs. It is Dr. Rottnek's opinion that many of the inmates he sees at the jail are on excessive opioid medications before incarceration and he feels he cannot rely on the prescribing patterns of their previous physicians. Dr. Rottnek disregards the medical judgment of the treating physicians for those inmates without examining the inmates and making his own medical judgment regarding their medical needs prior to the implementation of his pain management policy.

Although Dr. Rottnek testified "we need to examine them and then take a rational stepwise approach to pain management that may or may not have happened in the community," Dr. Rottnek did not examine plaintiff prior to the withdrawal of his Vicodin prescription. The decision to place plaintiff on Tylenol was not made based on an examination of plaintiff's medical records or his medical condition. Instead, this policy was applied to plaintiff without regard to his individual medical needs. The decision to discontinue the Vicodin pain medication was not done because Dr. Rottnek determined

9

that it was medically unnecessary, but instead was based on the practice that Dr. Rottnek instituted as applied to the vast majority of patient inmates including plaintiff. According to plaintiff, the Tylenol and subsequent alternative pain medications were ineffective in treating his pain and he informed the health care providers at the jail, including Dr. Rottnek, of this fact.

Because Dr. Rottnek's policy was applied to plaintiff without any medical determination regarding plaintiff's medical need for narcotic prescription medication for his chronic pain, the policy had the effect of denying plaintiff medical treatment. *See generally, Estate of Clutters v. Sexton*, No. 1:05CV223, 2007 WL 3244437, at *10 (S.D. Ohio 2007) (finding jail policy prohibiting narcotic prescription medication without individual determination of prisoner's medical need has the effect of denying the prisoner medical treatment). Contrary to Dr. Rottnek's contention, there was no reliance on a medical judgment made by him as to plaintiff's medical care prior to the substitution of Tylenol for narcotic pain medication prescribed to plaintiff by a prior treating physician. A reasonable jury could find that creating the policy and allowing it to remain in place, such that it was applied to plaintiff at the time of his incarceration, was a conscious and deliberate decision by Dr. Rottnek that showed indifference to the pain, suffering, and the effects of withdrawal that would be felt by the inmates, including plaintiff, who were subject to it. Plaintiff has raised a triable issue as to whether Dr. Rottnek violated his rights under the Eighth Amendment. *See generally, Chess v. Dovey*, No. CIV S-07-1767 LKK DAD P, 2011 WL 567375 (E.D. Cal. Feb. 11, 2011) (denying summary judgment because plaintiff raised triable issue of Eighth Amendment violation where defendants

substituted over-the-counter medication such as Tylenol and aspirin for inmate's pre-existing methadone prescription for pain management not because of any one of them determined it was medically necessary but based on policy prohibiting inmates from receiving methadone). Accordingly, this Court finds that Dr. Rottnek is not entitled to summary judgment on plaintiff's section 1983 claim.

B. **Medical negligence**

Defendant argues he is entitled to summary judgment on plaintiff's state law medical negligence claim alleging plaintiff fails to support his claim with sufficient expert testimony. Defendant contends that plaintiff's expert witness, Dr. Sturm, does not know the standard of care applicable to physicians practicing in the correctional institution setting and, therefore, he is not qualified to render testimony on the standard of care.

To make a submissible case of medical negligence, a plaintiff must establish that "(1) an act or omission of defendant failed to meet the requisite medical standard of care, (2) the act or omission was performed negligently, and (3) the act or omission caused the plaintiff's injury." *Sundermeyer v. SSM Regional Health Services*, 271 S.W.3d 552, 554 (Mo. banc 2008). As to standard of care, a plaintiff must prove that the defendant failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of defendant's profession. *Washington by Washington v. Barnes Hospital*, 897 S.W.2d 611, 615 (Mo. banc 1995). "Generally, expert testimony is required to establish the standard of care." *Laws v. St. Luke's Hosp.*, 218 S.W.3d 461, 466 (Mo.App. W.D. 2007). "A physician expert may opine regarding the standard of

11

care and whether a physician met that standard, even if the expert practices in a different field of specialization than the defendant." *Id.* at 469 (citing *Bella v. Turner*, 30 S.W.3d 892, 899 (Mo.App. S.D. 2000)). "This fact only affects the weight the opinion should be given." *Id.*

Defendant attempts to disqualify Dr. Sturm because he has not served as a physician in a correctional facility. However, Dr. Sturm testified that general medical principles apply here. Dr. Rottnek's training and board certification is in family practice. Dr. Rottnek's practice is subject to the quality indicators and annual education requirements of the American Board of Family Medicine. "Correctional medicine" is not a recognized specialty or subspecialty of the Accreditation Council for Graduate Medical Education, and no board certification is offered in correctional medicine. Dr. Rottnek is practicing in a correctional institution as a family practitioner. The issues in this matter concern pain management treatment by a family practitioner.

Dr. Sturm testified as to his experience in working with family practitioners in his pain management practice. Through his practice, he works with and interacts with family practitioners. Dr. Sturm receives referrals for patient care from family practitioners and coordinates with family practitioners regarding the treatment of patients' pain management care. Through his work as a specialist in the pain management field, he has become familiar with accepted practices of pain management as carried out by family practitioners. Dr. Sturm testified that Dr. Rottnek's method of reducing pain medication by eliminating prescription narcotic pain medication, starting Tylenol, and then seeing

12

where the patient goes from there is not a generally accepted practice among general practitioners.

Defendant also attempts to disqualify Dr. Sturm by arguing that Dr. Sturm is not aware of the limitations on care in a correctional institution. For example, defendant pointed out that Dr. Sturm was not aware that the Justice Center did not stock ten milligram doses of Vicodin and that he was not familiar with the guidelines for sending an inmate for radiologic imaging. This does not undermine Dr. Sturm's qualifications to testify on the standard of care for a family practitioner as to pain management. This Court finds that Dr. Sturm is qualified to render testimony on the standard of care in this matter and, therefore, defendant is not entitled to summary judgment.

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (ECF #36) is **DENIED**.

Dated this 20th day of January, 2015.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE